Next, and we'll move directly to that. I suppose Council may want to switch places, but just to avoid having to spend five minutes moving papers about, let's just stay on the same sides that we were. We can keep track. This case, for the record, is Blackboard v. Desire2Learn, 2008, 1368. Mr. Nadel, you're on. For the record, I believe this appeal is actually 1548, and the first argument was 1368. Can I get it backwards? Okay. Very good. Thank you for correcting me. My records are wrong on that. Good morning. This case presents an important issue that will be presented in nearly all complex commercial cases and patent cases that advance to final judgment. And the briefs present the issues identically, and the issue is whether the District Court erred in holding that 28 U.S.C. 1920 bars recovery of costs related to the production of documents. Well, Council, you said this is going to impact all patent cases, but this is a matter of regional circuit law, isn't it? It's not federal circuit law. That's correct, Your Honor. So it will impact all patent cases in this particular circuit if they later choose to follow whatever rule we espouse standing in their shoes. You'll be standing in the shoes of the Fifth Circuit, but you'll be the first court to issue an opinion specifically dealing with and only presenting this issue. But it binds no one, correct? It binds only courts in the Fifth Circuit. Okay, but not the Fifth Circuit. Should the Fifth Circuit later disagree, it doesn't bind them. If the Court of Appeals of the Fifth Circuit disagrees with you, it wouldn't bind them. Got it. But the issue itself is important. It's like a diversity case. We basically write in water. That's correct. That's correct. And the issue is one that will be presented in every complex commercial case and every patent case. And the parties agree in the briefs on what the issue is, and that's whether the statute, 1920, bars recovery of costs related to the production of documents in discovery, including electronic discovery costs. Now, there are two orders that are under review in this appeal, and I think they need to be addressed separately. But the first thing to understand is that this appeal is about approximately $445,000 in discovery costs. And one issue relates to necessity, whether these costs were, in the words of the statute, for copies necessarily obtained for use in the case. And as a preliminary matter, it's important to understand that as a factual finding on the question of necessity, the district court was utterly silent on all except for $10,338 of the $445,000 in issue. So the district court had no factual findings as to necessity on 96% of the costs in issue. Setting aside the $10,000, which I'll come back to, whatever standard of review was applied, the court is left with error for failure to address any of those other costs in terms of the issue of necessity, if there was legal error. Now, the discovery costs that Blackboard incurred in this case were incurred because the rules and the district court's orders required them to be incurred. Blackboard was required under the rules and court orders in the Eastern District of Texas to produce all documents relevant to any claim or defense. And in this court, that's defined by the local rules as anything that a reasonable opposing counsel wants to see. Counsel, there seems to be some splits of authority and not really a clear line of demarcation on whether or not discovery copies are necessarily incurred as opposed to, say, trial exhibits and documents actually used at trial. But, I mean, discovery is a massive endeavor. No doubt you know this better than I do. So the attempt to recoup costs associated with every page that happened to be photocopied doesn't seem to be one embraced by district courts generally. Would you agree with that? I don't agree with that, Your Honor. I think that district courts generally, and in the Fifth Circuit specifically, do embrace the proposition that you can recover costs of producing one copy of documents in discovery. And the Fifth Circuit Court of Appeals held that in the Stearns Airport case. They said, we have never held that producing one copy of documents to the other side is outside the scope of Section 1920. And the Blue Brief cites cases throughout the Fifth Circuit district courts in which discovery costs are awarded. And it also cites district court cases from the Third Circuit, a court of appeals case from the Sixth Circuit, district court cases in the Seventh Circuit and the Ninth Circuit and the Eleventh Circuit. It cites the Ninth Circuit Court of Appeals, and it also cites a local rule from the Northern District of California, which specifically provides that discovery costs for all disclosures are recoverable under a Rule 54 Bill of Costs. If the district court was correct, the local rules for the Northern District of California are in conflict with the statute. I think this goes to the overriding error of both orders that the district court came out with. And that is that the view of the district court is that discovery costs, including electronic discovery costs, are not recoverable at all. And we see that first in the August 7th order. And the August 7th order was the one that denied $241,000 worth of costs. Okay, so first you say discovery costs under Fifth Circuit law, they are okay. Correct. So that's one place where he presumably erred. And then you go to the next level, which is an electronic discovery cost would also be okay, because you've got several hurdles to get over, right? That's correct. Now, when you created the TIF files of all of these documents, how does the money break down between the TIF and the software that makes them word searchable? Meaning what portion, and is that something that you specifically argued to the judge? I mean, I know this issue was, in fact, raised. So what is your position on which of those constitute copies of paper under the statute? Sure. So making the TIF files word searchable is OCR, that's optical character recognition. And that constitutes $1,800 worth of the costs that are addressed in the first order, in the July 17th order. So the creation of the TIF file is the vast bulk of the expense. The creation of the TIF file is the vast bulk of the expense. Desire to Learn hasn't challenged that in their briefs, and all of the papers showing that are broken down invoice by invoice in the brief, and were all before the district court as part of the brief. But are you claiming that you're entitled to the costs for making the word searchable as well as the TIF file? Because I thought I understood you all as claiming entitlement to that. We did seek entitlement to that, Your Honor. The Sixth Circuit has specifically allowed those costs. There's no Fifth Circuit case, district court, other than this district judge or appellate, which says we're not entitled to the OCR costs. But we mostly want to emphasize that the OCR costs are a minuscule part of what we're talking about here. They're $1,800 out of $400. But if we found in your favor, we'd have to. Suppose we find in your favor on the TIF but not on the software costs. We would then have to remand. It doesn't seem to me that we can, from the record, parse those. I think that's correct, Your Honor, and we say in the reply brief, the original blue brief did ask the court to actually just award these costs. Desire to Learn made an argument that that was incorrect, and we say in the reply brief, we think that's right. The appropriate thing for the court to do would be to say, discovery costs are recoverable, electronic discovery costs are recoverable, and we remand to Judge Clark to determine which of these costs were necessary in the case. Of course, the term necessarily obtained in the case is marvelously ambiguous. You say, at least in part, I think your argument is, well, this was required, this discovery was required by rule, and therefore they were necessary to the case. My recollection is that in some cases, particularly in the old days, necessary was given a much more restrictive interpretation as applying only to those materials that were actually presented in the course of the trial, as opposed to discovery, which was regarded as on each party and not transferable through an award of costs. What is it about the term necessary? Let me ask the question this way. Necessary, do you think, would apply even without regard to a specific local rule, as long as the general rules of discovery and the federal rules of civil procedure would obligate parties to make mutual discovery? Well, I think even without a specific local rule, the holding of the Fifth Circuit in Stearns Airport is that the production of one set of discovery documents to the other side is not excluded from section 1920 paragraph. When you say it's not excluded, is it necessarily included? I mean, there's a lot of give and take about the way appellate courts allow district courts to do most of this case management. The reason I'm saying not necessarily excluded is because of what the Fifth Circuit actually said in Stearns Airport, and the language was, we have never held that producing one set of discovery documents to the other side is outside section 1920. So in all candor, they didn't say we hold that it is within section 1920. Is it your view that there is room for the exercise of discretion, again, not with respect to particular charges, but with respect to the question of what constitutes necessity in the district court? I think there is room for discretion in the district court as to what constitutes necessity. Let me ask the question this way. Do you think it would be permissible for one district court to say that general discovery production is necessary and for another judge sitting in the next courtroom in the same district to say, no, it isn't, and for both to be upheld? I don't think that kind of discretion is permissible, Your Honor. What's the level of discretion that you think is permissible? I think a district court would be able to look at a particular thing that you did in discovery and say, well, Blackboard produced a million dollars of these documents and Desire to Learn didn't really ask for these documents, so that wasn't necessary. I understand. All right. You don't have any authority on TIF, though, as I understand it, as to necessity, is that right? Several of the district courts from the Fifth Circuit that we cited did deal with electronic discovery, which is TIF. The Sixth Circuit Court of Appeals in BDT, which is the only court of appeals to have expressly addressed electronic discovery, also specifically dealt with TIF. Well, did they all hold that TIF was a compensable TIF and its other forms of electronic discovery? The only descent from that, Your Honor, is the Tenth Circuit, which has held as a rule that discovery costs are not recoverable, but all of these other circuits. Well, I'm making a distinction here between the electronic and the other discoveries. No court of appeals has held either way, and no court that we're aware of, Your Honor, has ever distinguished between electronic discovery costs and regular discovery costs. What we're doing here, for example, when we're talking about scanning of hard copy documents, is instead of taking a pile of documents to a copy machine and it spits out paper copies, you take a copy of documents to what usually is the same machine and it spits out an electronic image which is produced on a disc. These are all documents. The Federal Rules of Civil Procedure specifically treats electronically stored information as a document. And isn't it generally cheaper? I'm asking, maybe you don't know, maybe you do, but isn't it generally cheaper? I think you don't have toner cartridge, you don't have paper, you've got memory, but memory is cheap. So isn't it generally a cheaper way to do discovery? It is cheaper, Your Honor. Vendors typically charge between $0.07 or $0.10 for a TIFF, and some vendors will actually charge as much as $0.25 for a paper copy. It's also cheaper to store, and it's more environmentally friendly. And what we're talking about here, really, we're talking about... Terminal diseases of all sorts. Blackboard produced more than 5 million pages of documents in this case. Those were produced as TIFF. You can imagine what that would have looked like if it had been produced in hard copy. Blackboard didn't want to do that. Desire to Learn served discovery requests that required Blackboard, under the local rules, to produce all documents that dealt with Blackboard's own products. I want to give you a minute to get to your 288 argument in the event that we don't... Well, let me ask you, in the event that we don't agree with your 1920 argument, does 288 give you, in your view, a separate avenue for attack, or do we have to agree with you on both? Your Honor, the 288 argument is Desire to Learn's argument, but we're not entitled to any costs. And I can talk about that. Yeah, if you would. Okay. Sure. If you would. Sure. There's two answers to that. First, Desire to Learn has said Blackboard is not entitled to any costs, and this case should be remanded for proceedings consistent with that decision. They didn't file a cross-appeal. The law is clear that if you don't file a cross-appeal, you cannot enlarge your rights on appeal. Well, suppose that they were to stand up today and say, of course what we meant is we aren't challenging the award that's been given already. We merely want to support the judgment. Isn't it the most sensible resolution of the cross-appeal rules to say, as long as you don't ask for more than you got, then you don't have to cross-appeal? I think if they were to change what they're asking for, that would be correct, Your Honor, and then you have to reach the merits of the 288 issue. Right. Okay. But let's assume they're going to stand up and say that they're not asking for return of the 140 or whatever is now on the table. Okay. Then we look at this Court's decision in Bradford, where you had Judge Michel, Judge Newman, and Judge Lurie, and they considered this identical. What do we do with O'Reilly v. Morris? Because I read the dense opinion in great detail and kept scratching my head saying I must be missing something because this rationale seems nonsensical. From a policy standpoint, what do we do with that? It's a Supreme Court precedent. I mean, do I just sweep it under the rug and say, well, 288 was enacted after O'Reilly? But you know what? O'Reilly was based on a predecessor statute. So what do I do? Well, when looking at the language of O'Reilly v. Morris, I was unable to find in there anywhere the language of the statute that they were talking about. Yeah, me neither. It referred to Act of Congress. Yes. So I don't think there's a basis looking at O'Reilly v. Morris to say that was a predecessor statute or know how that statute is different from the statute that Congress has enacted now. Yeah, but okay. What you just told me is you didn't do the research to be able to argue whether I mean, did you look for an Act of Congress? Yes. So they cite other 1800s cases that came after O'Reilly v. Morris, and those do have statutory language. And it appears that the statute is not actually a predecessor to Statute 288. It's a predecessor to 28 U.S.C. 1928, which is a different statute which talks about what happens in a patent case where some claims are invalidated and other claims are not invalidated. And in 28 U.S.C. 1928, which it appears is actually the predecessor statute, the invalidation is only on the grounds of what today would be called anticipation or obviousness, where you're claiming an invention that's broader than what you invented. It's not on the grounds of indefiniteness or failure to satisfy 112.6, which is what was at issue here. Okay, so you would say O'Reilly's rationale is not binding on us because even if the predecessor statute was identical to 288, it was limited to prior art-based invalidation rather than indefiniteness, and those which, by the way, did they really even exist back then? I mean, wasn't sort of in the 1800s all invalidation based on prior art for the most part? Well, correct. It describes it in specific terms for reasons of invalidation, and it wasn't the predecessor statute of 288. It was the predecessor statute of a different statute, which is still on the books and is not raised in their brief as a defense, but that is 28 U.S.C. 1928. 1928. Correct. And aside from the fact that 1928 hasn't been raised by Desire to Learn, it wouldn't apply to us here because our statute was, our claims were invalidated by the district court for different reasons other than those discussed. But given the parallel language in 1928, perhaps it should be construed in pari materia with 288, or 288 construed in pari materia with 1928. Well, I think it's different language, Your Honor. I think that 1928 is... It doesn't have the disclaimer language in it, but other than that it's certainly a similar concept. But 1928 appears to me to be limited to specific types of invalidation. Sure. And 288 deals with other types of invalidation, but they both deal with invalidation of part of a patent that otherwise is the basis for a judgment, and both of them say the consequence of such a scenario is the plaintiff gets no cost. I would say if we were going to construe those statutes in pari materia, we would have to look at the fact that O'Reilly v. Morse doesn't identify what statute it's talking about and is from a different regime, whereas in this regime we have the Bradford case where we have this court construing the identical fact scenario where two claims were found invalid and two claims were found... Not correct. That's true, Your Honor, but it can still be considered by this court as the court considered in Seagate non-presidential opinions. And it said in that opinion that this argument borders on the ridiculous. Those were the language that the Chief Judge used. I think we have your case and we'd better move on. Thank you, Your Honor. Let's see. For this case we have... Mr. Quillen. Yes, Mr. Quillen. Thank you, Your Honor. George Quillen for Desire to Learn, Incorporated. The district court did not commit any reversible error in refusing to give Blackboard the additional money it sought. There are two very different reasons. One is the statute, both of them are statutory. The first is the Section 288 that we were just talking about. That statute prohibits the district court from giving Blackboard any amount of money. It certainly prevents the district court from giving Blackboard the money it was seeking, the additional amount. While you could stand here and rely upon O'Reilly, and you did, does it make any darn sense to you? I realize that sometimes I'm bound to do things that to me seem nonsensical because the higher authority, in this case the Supreme Court or Congress legislated it, and I'm bound to do it. But, I mean, as a patent attorney, does it make any sense to you? It made a lot of sense to the Congress, Your Honor. No, no, no. Does it make any sense to you? Because I read O'Reilly, and then I read it again, and then I told my law clerk we're clearly missing something, and he read it several more times. No one's ever read this case more than our chambers, and yet we can make no sense of it from a policy standpoint. How can you tell a patentee that they had to disclaim something they had no reason to believe was invalid given that it was issued by the Patent Office, it survived several levels of scrutiny all the way up to the Supreme Court, and then tell them if they don't disclaim that they don't get the other stuff that they were entitled to? How is a patentee supposed to be so prescient, and wouldn't he then really effectively be required to sort of pretty much disclaim everything? How does it make any sense as a practical matter? That's what Chief Judge Taney said. He says in his opinion, the patentee got the patent from the Patent Office, the trial court upheld it, and at the Supreme Court there was a division of opinion about the validity of that claim. Nevertheless, because he didn't disclaim, no costs. I suppose that you could argue that the disclaimer is, to quote an advocate earlier, the red herring here, in that if you just strip the disclaimer language out of the statute altogether, there wasn't a disclaimer in this case, you would be left with a statute that says if your patent is invalidated in part, you don't get cost. Isn't that the effect of the statute if you strip out the disclaimer language? I think that may be, Your Honor. In the Sessions case, the other Supreme Court case we rely on, there was no, like here, there was no disclaimer before the trial started. Indeed, there had been previous litigation mentioned in the opinion where that patent had been upheld. Nevertheless, the trial judge says as a condition for relief, because one claim was not valid, the patentee was required to disclaim. The Supreme Court upheld that. This one, that understanding of the statute has carried on. There are opinions from the Seventh Circuit that we cited, that Bishman and the one it relies on, there are opinions from many other circuit courts, some that we haven't cited, but Gottschalk in the 1930s, right before this court was created, there was the Allen Archery case in the Ninth Circuit that went through some of the history. In that case as well, there was a situation where, although the patentee had disclaimed some claims, he hadn't disclaimed others, and at trial, some of those other claims were held to be invalid, and because he hadn't disclaimed those claims before trial, no costs. Now, would you agree that the 288 section itself doesn't dictate the O'Reilly v. Morse? The language 288, which I realize is not the exact language that was necessarily confronted by O'Reilly and that Supreme Court at the time, because 288 was enacted after, and we can't even be entirely positive what statute they were referring to when they said an act of Congress, because they didn't cite it, and I certainly didn't get the briefs, I don't know if you did, so when I read 288 itself, in the absence of the O'Reilly v. Morse, I don't see that it requires, in the same case where a claim and a patent is invalid, it necessarily has to eliminate the possibility of costs. So when I read 288, I mean I've got the language here in front of me, in a vacuum, I have trouble getting to the position you want me to get to. I think it's only O'Reilly that gets you there. So tell me if I'm missing something in the language of 288 which gets me there independent of O'Reilly. The statute says if the claim is invalid, no costs. Yes, actually what it says is whenever without deceptive intention a claim of a patent is invalid, an action may be maintained for the infringement of a claim of the patent which may be valid. Well, how can you have a claim that's invalid, definitively invalid, and then an action may be maintained for one that could be valid? It necessarily implies to me an order of chronology. A claim was invalidated. That doesn't stop you from getting costs when you later seek to assert other claims, other than the invalidated one, in a separate later action. It seems to me that the sentence necessarily implies a chronology. So why is that not true? That's what the Bradford court evidently understood when it said it was obviously that there had to be some prior determination. That's not obvious at all, Your Honor. The two sentences in 288 can be looked at as an upside and a downside for the patentee. The upside is even if you have a claim that's invalid, you can maintain, you can carry on with your litigation. That's a departure from a view earlier on that if one claim in the patent is no good, the whole patent dies. The statute says that's not the way we're doing it. If you as the patentee, even though you have one claim that's invalid, you may maintain. You can carry on with your litigation. That has nothing to do with this section. It has nothing to do with carrying on with the litigation so much as it does costs in your case, right? It seems earlier when you answered Judge Bryson's question about if you take out the word disclaimer, that effectively what this statutory section results in is you can never get costs if any portion of your patent is invalidated in the process of this particular litigation. That's the settled law in this country for 150 years. But then how do we take out disclaimer? It renders it superfluous, right? The settled law that you're telling me to adopt, there's no way you could disclaim something that hasn't been rendered invalid. It's a cart and a horse. Sure there is. No, the cart can't come before the horse. I guess the horse would probably push it by the nose somehow. You're a patent attorney. You'll come up with some way this can happen. In the 1952 Act, there was another statute, another revision, I think it's section 253, which allows disclaimers of entire claims. You're allowed to disclaim. In the patent community, we see that most frequently in terms of terminal disclaimers, but you're allowed to disclaim. But you're not out there encouraging your clients to disclaim claims that have never been found to be invalid and for which you have no real reason to think they're invalid. If it makes a difference of $700,000 in costs, I would certainly encourage it. But you can only know that ex post. You can't know that ex ante. That's a risk that the Congress in its settled consideration has made. That's the downside for the patentee. You're defending it tooth and nail, but I don't understand how because I still haven't gotten from you some legitimate reason why someone from a policy standpoint, why would Congress enact a statute the way you want me to interpret it? Because I look at 288. I do not interpret it the way you want me to interpret it. I realize I've got O'Reilly hanging over my head, but pretending it's not there, I do not interpret it that way. And I can't think of any policy justification for making sausage out of the statute the way you want me to. And I'm not getting it from you. And I say sausage because I'm going to cut out disclaimer and I'm going to put this together with that. At the end of the day, how could you recommend your client? Which claim would you tell them to disclaim? The ones that are invalid. Yes, but they don't know which ones those are. He knows. What do you mean he knew? They didn't know until the decision was rendered. If one sues the accused infringer on every claim that's in the patent, then that increases the risk for the patentee and increases the cost of the litigation. If instead the patentee focuses and picks the particular claim that only that accused infringer infringes and is more convinced, is more certain, and chooses to sue only on the strong claims, that reduces the overall cost of the enterprise. Do you think 288 was an exercise in limiting scope of litigation? It was a change in practice. As Federico points out, the disclaimer practice for 100 years had been very complex, which included whether the disclaimer was timely enough filed and whether you disclaimed all the right kind of claims. To simplify that process, 288 comes into play. It had been carried forward from the revised statutes in like 4922, which had come forward from this other case law, the 1837 statute and the 1836 statute and all the others. The idea, evidently from Congress' perspective, is that if the patentee sues and in that suit includes claims that are not valid, then the patentee gets no cost. That, by the way, invalidity is not limited to prior art. Then why would you ever need to disclaim? Why does this word disclaimer appear in here? Because under your logic, you can only get costs if you only sue on claims that were valid. Hey, pick just one and don't risk the others. What's the purpose of the disclaimer? You can't disclaim until after it's been held invalid. That's the only reason for a disclaimer. I realize technically you can disclaim claims. You can pick and choose whichever ones you want, but that's not what the statute pertains to. The statute pertains to disclaiming the invalid claim. A claim is not invalid until a court renders it such. I don't think you agree with that proposition, right? If I understand your argument, you're saying invalid in this – tell me if I'm wrong or not – that you're saying that invalid, it does not mean invalidated. You're saying that it is invalid on the day it was born. It was born invalid, and it only was later declared to be invalid by a court or abandoned or whatever. Isn't that critical to your construction of the statute as I understand it? Sure. On page 9 of our red brief, we quote from Federico, who says that 288 is a restatement of the earlier corresponding provision in the revised statute, 4922, and operates so that, quote, a patentee who secures a favorable judgment on some claims of the patent cannot recover costs if a claim of the patent is found invalid. Not had been previously determined to be invalid, is found invalid. That's what happened in O'Reilly. That's also what happened in Sessions. That's what happened in the Allen Archery case in the Ninth Circuit. That this court, in its own Allen Archery case, agrees with. Do you want to talk about the 1920 issue? Very briefly, Your Honor. As counsel says, there's no Fifth Circuit decision that's going to speak directly to the OCR and the TIF costs. Let's start, though, with the Stearns case. Do you agree that the Stearns case holds that 1920 can apply to general discovery materials, copying of materials produced in the course of general discovery? Only if they're necessary. What does that mean? That's the problem. That's part of the discretion that a district court judge has. I understood Stearns to be saying necessary was going to be construed more broadly than it is in some instances. I think, in my experience at least, necessary previously used to be construed to mean only that which you handed over to the court and to the co-counsel. But is it not the case that Stearns stands for the proposition that necessary may include materials that are produced in discovery, even though they never come within 100 miles of the courthouse? I think it could be read that way, and the district court has discretion to decide whether it's necessary or not. This district court said on page 120 of the appendix that Blackboard has failed to show that electronic conversion of hard documents were not merely for the convenience of the parties. The district court judge was in a position to make that sort of factual finding, and the burden is on Blackboard. Now you're arguing electronic versus paper copies, right? I'm sorry? You're making this argument with respect to electronic versus paper copies? Yes. Okay, so here's the thing. If they actually saved you money, or if money was saved by doing it electronically rather than by paper, wouldn't you admit that the district court could freely award these in paper copies? I'm concerned about the electronic distinction. I understand. That's clearly where I'm going. Unlike the BDT case where the burden was on the objecting party, in that circuit evidently, in the Fifth Circuit and in this court, the burden is on Blackboard. If there's an objection, the burden is on Blackboard to justify its costs. It's got to show a necessity, and it didn't do that. It's not the job of the desire to learn. It's not the job of the district court. It's not the job of this court to parse through the invoices and figure out what's what. What Blackboard asserted on page 317 of the appendix in their paper, in their submission for costs, under section 1924, they've got this itemization, this description, and in every one of those fees under production of documents, it includes either processing the files for review or scanning an OCR, converting the documents. Those costs aren't within the scope of 1920 paragraph 4. In the BDT case that they rely on, that decision did not rest on 1920 paragraph 4. Rather, the circuit court there said those costs could come within 1920 paragraph 3, printing costs. That's not what they're asserting here. Thank you, Mr. Quillen. Thank you, Your Honor. Two quick points. One, if the court wrestles with how to deal with O'Reilly v. Morse in light of how the court reads section 288, I think there's a simple answer that Mr. Quillen provided in his argument. He said 288 was a change in practice, and I think that's right. 288 is different, and it's a change in practice from how things were before. O'Reilly v. Morse is not controlling on how this court reads section 288, so the court should look to Bradford and look to the practice, which is many cases have patents where one claim is ruled invalid and another case is found infringed, and the district courts award costs as a matter of course rather than making new law, which doesn't make any sense requiring parties to disclaim claims as soon as they're issued and before any court has found them invalid. Well, if you set aside the disclaimer for a minute and you just look at the policy underlying what strikes me as the core element of the rule, which is you bring an action that has both valid, not yet invalidated, but ultimately to be declared invalid and valid claims, then you're taking a chance on not getting a cost award if you went on part of the case. If you exercise a little more care at the front end, assuming you have the foresight to see what may be in the cards, you may get costs if you shave down the number of claims you're asserting. That doesn't seem crazy as a matter of policy to me, does it to you? It does not, and that would be an easy thing for Congress to do, but I would suggest that Congress could say it a lot more simply. They could say if you sue on a patent and some claims are invalid, no costs, but they haven't done that here. I think it makes more sense to read what they actually did do as saying, okay, Blackboard, you've got claims 1 through 35. They've been invalidated by the district court. Let's say we lose the cross-appeal. Those claims are invalid for good. If we're going to go and sue somebody again and we don't disclaim, then we don't get costs. Well, then you wouldn't survive a motion to dismiss those claims for collateral and estoppel reasons. Those claims would be out of the case in about a nanosecond. Well, you'd still have the rest of the claims. Yeah, but it's sort of a non-issue. Well, the products accused would be the same and you'd go forward to judgment. There would be lots of costs incurred. May I make one other point, Your Honor? Sure. Mr. Quillen directed the court to joint appendix 1920, which is where the court made its findings. I wrote down 1920. 1920 is the statute. It would be a coincidence if it's in the same page. Yes, that's what I wrote down. But actually, I think we need to look at joint appendix 124. I'm sorry. Yes. Let me redirect the court again one more time. To joint appendix 120. 120 is what I wrote down. Mr. Quillen read the sentence, and I think it's important to read it carefully in analyzing what the district court did. It says, While Blackboard argues that electronic conversion was necessary to answer D2L's request for discovery, Blackboard has failed to show that electronic conversion of hard documents were not merely for convenience of the parties. So there the district court is talking about one specific thing, which is the scanning of hard documents. And that is not most of the costs that we're talking about here. That is the $10,000 worth of costs that I was referring to earlier, which is broken out in the gray brief. Most of these costs, what we're talking about when we talk about TIF creation, is you've got an email or you've got a Microsoft Word document or an Excel file, and that needs to be changed from computer language into a form that's usable to the other side and is produced as TIF. And that's what we're talking about here. And as to those costs, the district court made no findings. Rule 54 says that these costs shall be awarded. And if a district court is going to make no findings about the vast majority of the cost necessity under whatever standard of review applies, that would be an abuse of discretion. So you're distinguishing between TIF and the other electronic conversion. That's correct. Electronic conversion to TIF from an electronic file makes up the vast majority of the costs. We think the district court would sort this out correctly if it were simply instructed by this court that in the Fifth Circuit, discovery costs, including electronic discovery costs, are recoverable. Thank you, Your Honor. Thank you, Mr. Maynard. Thank you, both counsel. The case is submitted.